# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **THOMAS EDWARD KYLE,** | ) |
| | ) |
|     **Plaintiff** | ) |
| | ) |
| v. | )    Case No.: 4:12-CV-3556-VEH |
| | ) |
| **CAROLYN W. COLVIN,**[1] | ) |
| **ACTING COMMISSIONER,** | ) |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION,** | ) |
| | ) |
|     **Defendant.** | ) |

## **MEMORANDUM OPINION**

Plaintiff Thomas Edward Kyle brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. He seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[2] Mr. Kyle timely pursued and

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Carolyn W. Colvin should be substituted for Commissioner Michael J. Astrue as the Defendant in this suit. ("Any actions instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

[2] In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits ("DIB") or Supplemental Security Income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court

exhausted his administrative remedies available before the Commissioner. The case is ripe for review under 42 U.S.C. § 405(g).[3]

## FACTUAL AND PROCEDURAL HISTORY

Mr. Kyle was 43 years old at the time of the administrative hearing before the Administrative Law Judge ("ALJ"). (Tr. 56). He has completed the ninth grade. (Tr. 238).[4] He has past relevant work as roofer, roofer helper, stock clerk, duct layer helper, plumber helper, and an automobile mechanic helper. (Tr. 39). He claims he became disabled on November 1, 2008, due to: back and shoulder pain and blindness in his right eye. (Tr. 235). His last period of work ended on October 1, 2008. *Id*.

On March 13, 2009, Mr. Kyle protectively filed a Title II application for a period of disability and DIB. (Tr. 31). He also protectively filed a Title XVI application for SSI on February 18, 2009. *Id*. On June 12, 2009, the Commissioner initially denied these claims. *Id*. Mr. Kyle then filed a written request for a hearing on June 30, 2009. *Id*.

The ALJ conducted a hearing on the matter on November 10, 2010. *Id*. On February 7, 2011, he issued his opinion concluding Mr. Kyle was not disabled and

---

decisions.
   [3] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.
   [4] Although Mr. Kyle listed the ninth grade as his highest grade completed, his medical reports indicate at multiple times that he had a tenth grade education. *See, e.g.*, (Tr. 320).

2

denying him benefits.  (Tr. 41).  Mr. Kyle timely petitioned the Appeal Council to review the decision on February 22, 2011.  (Tr. 26).  On August 15, 2012, the Appeals Council denied a review on his claim.  (Tr. 1-3).

Mr. Kyle filed a Complaint with this court on October 9, 2012.  (Doc. 1).  The Commissioner answered on January 22, 2013.  (Doc. 7).  Mr. Kyle filed a supporting brief (Doc. 10) on March 5, 2013, and the Commissioner responded with her own brief (Doc. 11) on April 8, 2013.  With the parties having fully briefed the matter, the court has carefully considered the record and affirms the decision of the Commissioner.

## **STANDARD OF REVIEW**

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1983); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  *Bloodsworth*, 703 F.2d at 1239.  This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a

conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*. The court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his entitlement for a period of disability, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[5] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not

---

[5] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through October 18, 2013.

4

less than [twelve] 12 months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(I-v). The Commissioner must determine in sequence:

>     (1) whether the claimant is currently employed;
>     (2) whether the claimant has a severe impairment;
>     (3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
>     (4) whether the claimant can perform his or her past work; and
>     (5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562–63 (7th Cir.1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir.1986). The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, [he] will automatically be found disabled if [he] suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform [his] past work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir.1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id*.

### FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

First, the ALJ found that Mr. Kyle met the insured status requirements of the Social Security Act through December 31, 2014, and had not engaged in substantial gainful activity since November 1, 2008, the alleged onset date. (Tr. 33). He then found that Mr. Kyle had the following severe impairments: degenerative disease in both shoulder joints verified by MRI, chronic obstructive pulmonary disease, and blindness in the right eye. *Id*. However, he concluded that Mr. Kyle did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 35).

Next, the ALJ determined that Mr. Kyle retained the residual functional capacity ("RFC") to perform light work, except that the claimant could sit for six hours in an eight hour work day with normal breaks and stand and walk for six hours in an eight hour work day with normal breaks. *Id*. With his right shoulder, Mr. Kyle could lift, carry, push, and pull ten to fifteen pounds. Id. With his left shoulder, he could lift, carry, push, and pull 25 pounds frequently and 40 pounds occasionally. *Id*. He could occasionally climb ladders, ropes, and scaffolds,

should avoid unprotected heights and dangerous, moving machinery, and could not work where he would be required to read or prepare documents of any kind. *Id*.

Finally, the ALJ determined that, although Mr. Kyle was unable to perform any past relevant work, he retained the capacity to perform jobs that existed in significant number in the national economy. (Tr. 39-40). Thus, the ALJ ultimately determined that Mr. Kyle had not been under disability, as defined in the Social Security Act, from November 1, 2008, through the date of the decision. (Tr. 40).

## **ANALYSIS**

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir.1980)).[6] However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id*. (citation omitted).

---

[6] *Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

Mr. Kyle urges this court to reverse the Commissioner's decision to deny his benefits because ALJ's decision was not supported by substantial evidence. The court disagrees.

## I. Substantial evidence supports the ALJ's Decision.

Mr. Kyle maintains that the decision of the Commissioner is not supported by substantial evidence because (1) the ALJ's RFC findings were not supported by substantial evidence and (2) he failed to fully and fairly develop the record.

The Commissioner has the duty to weigh the evidence, resolve material conflicts in testimony, and decide the case accordingly. *See Watson v. Heckler*, 738 F.2d 1169, 1172 (11th Cir. 1984); *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). "Even if the evidence preponderates against the [Commissioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Mr. Kyle bears the burden of proving that he is disabled. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) ("[T]he claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim."). Mr. Kyle did not satisfy his burden, and this court finds that the ALJ's determination that Mr. Kyle was not disabled is supported by substantial evidence.

## A. RFC Determination

A claimant's RFC is "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). At the administrative hearing level, the ALJ "is responsible for assessing [the claimant's] residual functional capacity." 20 C.F.R. § 404.1546(c). In making this determination, the ALJ considers "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3).

In making his RFC finding, the ALJ determined that Mr. Kyle's medically determinable impairments could reasonably be expected to cause the alleged symptoms but that his statement's concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they differed with the RFC finding. The ALJ then determined Mr. Kyle's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work. … With his right upper extremity, the claimant can lift, carry, push, and pull 10 to 15 pounds. With his left upper extremity, the claimant can lift, carry, push and pull 25 pounds frequently and 40 pounds occasionally. The claimant can only occasionally climb ladders, ropes, and scaffolds. He should avoid unprotected heights and dangerous, moving machinery. He cannot do work where he is required to read or prepare documents of any kind.

(Tr. 35). Mr. Kyle contends that this determination was not supported by substantial evidence for various reasons.[7] This court is not persuaded.

---

[7] For the purpose of clarity, the court addresses Mr. Kyle's arguments in an order different than that in which they were presented.

9

First, Mr. Kyle argues that the evidence does not support the ALJ's findings on how much Mr. Kyle could lift and that the ALJ's distinction between the right and left shoulders was arbitrary.[8]  To support these contentions, Mr. Kyle points to two July 2009 MRI scans that reveal a "[r]eactive cyst formation" in the left shoulder and a "partial thickness tear of the bursal surface of the supraspinatus tendon" in the right shoulder.  (Tr. 342-43).  Furthermore, these MRI scans indicated "tendonitis/tendinopathy" in both shoulders.  *Id*.

On the other hand, the May 2009 consultative examination supports the ALJ's findings.  Dr. Alvin V. Tenchavez reported that Mr. Kyle had "[n]o pain, restriction or swelling on review of the joints … including … [the] left shoulder." (Tr. 278).  He further found that Mr. Kyle's "[g]rip strength, on a scale of 5, [was] 5/5 in all muscle groups."  *Id*.  Mr. Kyle notes that Dr. Tenchavez also listed "left shoulder pain" in his diagnosis section.  (Tr. 279).  This fact does not remove the examination's evidentiary support for the ALJ's RFC finding.

Mr. Kyle's testimony also supports the ALJ's determination.  Mr. Kyle testified that it was his right shoulder that caused him the most pain.  (Tr. 78).  Mr. Kyle testified that he could lift "10, 15 pounds" while doing laundry but that

---

[8] In his brief, Mr. Kyle appears to suggest that the ALJ should have given greater restrictions for his left shoulder, rather than his right. (Pl.'s Br. 7).  As discussed below, this is directly contradicted by his testimony.

heavier lifting would bother his right shoulder. (Tr. 83). The ALJ similarly found that Mr. Kyle could "lift … 10 to 15 pounds" with his right extremity. (Tr. 35).

Regarding his left side, Mr. Kyle stated "[m]y left one [shoulder]? It's – now, I can pick up my – one of my kids and it don't [sic] bother me, but it don't [sic] hurt like my right one." (Tr. 80). In response to what limitations he did have on his left shoulder, he testified that picking up his forty-pound daughter was about the most he could handle. (Tr. 83). The ALJ then found that Mr. Kyle could only occasionally lift forty pounds with his left shoulder. (Tr. 35). Substantial evidence, particularly Mr. Kyle's testimony, supports the ALJ's determination of how much weight Mr. Kyle can lift.

Mr. Kyle also contends that the ALJ erred when he failed to reconcile an apparent inconsistency between the MRI scans and x-rays. While the MRI scans indicated tendinitis in the left shoulder, Dr. Tenchavez's x-rays indicated no fracture or dislocation in the left shoulder. (Tr. 278). Dr. Tenchavez further opined that the x-rays were "unremarkable." *Id*. Contrary to Mr. Kyle's assertions, this is not an inconsistency. Diagnosis of tendinitis typically consists of clinical evaluation sometimes coupled with MRI and/or ultrasound imaging.[9]  X-

---

[9] *See* The Merck Manual's Online Medical Library: The Merck Manual for Healthcare Professionals, *available at* http://www.merckmanuals.com/professional/musculoskeletal_and_connective_tissue_disorders/bursa_muscle_and_tendon_disorders/tendinitis_and_tenosynovitis.html?qt=tendinopathy&alt=sh ("Usually, the diagnosis can be based on symptoms and physical examination, including palpation or specific maneuvers to assess pain. MRI or ultrasonography may be done to confirm

rays, on the other hand, reveal bone conditions.[10] The ALJ also noted this distinction in the administrative hearing. (Tr. 51) ("[I]f he has soft tissue injuries, it's not unusual that the x-ray would be minimal because all it shows is problems generally with the bones.").

Next, Mr. Kyle contests the finding that he can occasionally climb ladders, ropes, and scaffolds. He states:

> It would appear unlikely as a matter of common interpretation that an individual with left should pain as diagnosed by SSA's own consultative physician [Dr. Tenchavez] and tendon tear in the right shoulder as objectively demonstrated [by an MRI] could climb ladders, ropes and scaffolds even on an occasional basis.

(Pl.'s Br. 8-9). Assuming this statement is factually correct, "unlikely as a matter of common interpretation" is not sufficient to reverse the ALJ's findings. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (internal citations omitted) ("Even if the evidence preponderates against the Secretary's factual findings, we must affirm if the decision reached is supported by substantial evidence.").

---

the diagnosis .").
　　[10] *See* The Merck Manual's Online Medical Library: The Merck Manual for Healthcare Professionals, *available at* http://www.merckmanuals.com/professional/musculoskeletal_and_connective_tissue_disorders/approach_to_the_patient_with_joint_disease/evaluation_of_the_patient_with_joint_disorders.html?qt=Osteoarthritis&alt=sh#v902413 ("Plain x-rays in particular reveal mainly bony abnormalities.").

In *Moore v. Barnhart*, the Eleventh Circuit addressed a similar situation. The court stated that "rather than pointing to medical evidence that conflicts with the ALJ's RFC determination, [the claimant] argues inferentially that based on their evaluations, [her] physicians would most likely disagree with the ALJ's findings." 405 F.3d 1208, 1213 (11th Cir. 2005).  The court found "this sort of extrapolation and conjecture remains insufficient to disturb the ALJ's RFC determination, where it is supported by substantial evidence." *Id*.  Similarly, Mr. Kyle only hypothesizes about what his doctors might have thought.  Dr. Tenchavez and the doctors interpreting the MRI scans did not opine that Mr. Kyle's injuries would preclude climbing.  In fact, Dr. Tenchavez indicated that Mr. Kyle did not have any neuromuscular or musculoskeletal restrictions.  (Tr. 278).  Mr. Kyle's speculation that his doctors would restrict him to no climbing is insufficient to overturn the ALJ's findings.

Furthermore, even if the ALJ's conclusion that Mr. Kyle could occasionally climb ladders, ropes, and scaffolds was not supported by substantial evidence, the error was harmless.  The jobs – various assemblers, cleaner, and welder – listed by the vocational expert, (Tr. 96-97), and relied on by the ALJ, (Tr. 40), do not require any climbing.  *See* DOT Listing No. 783.687-010 *available at* DICOT § 783.687-010; DOT Listing No. 729.684-054 *available at* DICOT § 729.684-054; DOT Listing No. 734.687-014 *available at* DICOT § 734.687-014; DOT Listing

13

No. 302.685-010 *available at* DICOT § 302.685-010; DOT Listing No. 813.684-022 *available at* DICOT § 813.684-02.[11]  Therefore, any error regarding Mr. Kyle's climbing capacity would be harmless. *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

Finally, Mr. Kyle asserts that the state Single Decisionmaker's physical RFC assessment "was not entitled to any particular deference." (Pl.'s Br. 6).  And the ALJ agreed!  The ALJ gave the assessment "little weight … because [he] considered the totality of the claimant's testimony, submissions, and medical records in determining that *the claimant has a lower exertional level*."  (Tr. 38) (emphasis added).  Mr. Kyle, however, was not convinced:

> "The ALJ gave the State Agency assessment … little weight without identifying it as a non medical [sic] opinion on the basis that he had considered the totality of the evidence in determining a lower exertional level. … In fact, the ALJ adopted most aspects of this non medical [sic] RFC."

(Pl.'s Br. 8).  Specifically, Mr. Kyle argues that the ALJ relied on this assessment[12] for his findings on Mr. Kyle's ability to lift, carry, push, pull, and

---

[11] In each of their descriptions, these jobs all contain the statement: "Climbing: Not Present - Activity or condition does not exist." *Id*.

[12] The state Single Decisionmaker found that Mr. Kyle could frequently lift fifty pounds, occasionally lift twenty-five pounds, push and/or pull without limitations, and climb frequently. (Tr. 254-55).

14

climb. As discussed above, these determinations are supported by substantial evidence without this assessment. The ALJ did not err simply by reaching conclusions similar to that of the state Single Decisionmaker.

### B. Development of the Record.

The ALJ has a duty to develop a full and fair record. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Nevertheless, the claimant bears the burden to prove that he is disabled and to produce medical evidence supporting his claim. 20 C.F.R. § 416.912(c); *Ellison*, 355 F.3d at 1276. Mr. Kyle contends that the ALJ did not fulfill his duty because (1) he failed to request a medical source opinion; (2) he did not order a second consultative examination; and (3) he did not consult a medical expert opinion pursuant to 20 C.F.R. 404.1529(b).

#### 1. Medical Source Opinion

Mr. Kyle avers the RFC determination cannot be based on substantial evidence because the record did not contain a medical source opinion on the claimant's limitations. Mr. Kyle states that "an MSO of some kind is crucial to the analysis of functioning based on the medically determinable impairments." (Pl.'s Br. 6).

There is no bright line rule about when the ALJ must request a medical source opinion from a physician. In some cases, a treating physician's opinion is

necessary. *See, e.g., Coleman v. Barnhart*, 264 F.Supp.2d 1007, 1010 (S.D. Ala.2003). In others, it is not. *See, e.g., Green v. Social Security Admin.*, 223 F. App'x. 915, 923 (11th Cir. 2007) (affirming ALJ's RFC assessment as supported by substantial evidence even though the ALJ discredited the only medical source opinion in the record). The ultimate question in each case remains whether substantial evidence supports the ALJ's RFC assessment.

Here, as discussed above, substantial evidence supports the ALJ's RFC assessment despite the absence of a MSO. Thus, the ALJ was not required to request a medical source opinion before making his RFC determination.

### 2. Consultative Examination

The ALJ's duty to develop the record encompasses an obligation to order a consultative evaluation "when the evidence as a whole is insufficient to allow [the Commissioner] to make a determination or decision on [the] claim." 20 C.F.R. § 404.1519a(b). When the record does contain sufficient evidence to make an informed decision, the ALJ is not required to order a consultative examination. *See Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001); *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988). Sufficient evidence does not mean "absolute certainty" regarding a claimant's condition; the Social Security Act only requires substantial evidence. *Holladay*, 848 F.2d at 1210 (11th Cir. 1988).

Mr. Kyle argues that because the MRI scans indicating tendinitis conflict with Dr. Tenchavez's finding of "[n]o pain, restriction[,] or swelling on review of the joints," the ALJ needed to obtain a second consultative examination. (Tr. 278). The court disagrees.

While the MRI scans do conflict with Dr. Tenchavez's findings, the ALJ still had sufficient evidence to make an "informed decision." The ALJ determined that, despite Dr. Tenchavez's findings, Mr. Kyle *did have* "degenerative disease in both shoulder joints verified by MRI." (Tr. 33). After establishing this severe impairment, he gave Mr. Kyle a lower RFC than did the State Decisionmaker, who based his assessment on Dr. Tenchavez's examination. The ALJ also relied on Mr. Kyle's own statements to make this RFC determination. The MRI results, Dr. Tenchavez's examination, and the claimant's testimony together provided substantial evidence for the ALJ to make an informed decision.

### 3. Medical Expert

Finally, Mr. Kyle argues that the ALJ should have consulted a medical expert before making the RFC finding. The ALJ "may ask for and consider the opinion of a medical or psychological expert concerning whether [the claimant's] impairment(s) could reasonably be expected to produce [his] alleged symptoms." 20 C.F.R. § 404.1529(b). Here, the ALJ did find a medically determinable impairment that could reasonably produce the alleged symptoms. (Tr. 36). The

determination of a claimant's RFC is not a medical assessment. *Langley v. Astrue*, 777 F. Supp. 2d 1250, 1261 (N.D. Ala. 2011). Thus, the ALJ is not required to consider a medical expert opinion before making his RFC finding. *Id*.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the parties' submissions, the court concludes that the decision of the Commissioner is supported by substantial evidence and that she applied proper legal standards in arriving at it. Accordingly, the decision of the Commissioner will be affirmed by separate order.

**DONE** and **ORDERED** this 20th day of December, 2013.

*[signature]*

**VIRGINIA EMERSON HOPKINS**
United States District Judge